<u>ORAL ARGUMENT NOT YET SCHEDULED</u>

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

| | | |
|---|---|---|
| WESTERN STATES PETROLEUM ASSOCIATION, | ) ) ) | |
| *Petitioner*, | ) ) ) | Case No.  25-1080 |
| | ) | |
| U.S. ENVIRONMENTAL PROTECTION AGENCY, | ) ) ) | |
| *Respondent*. | ) ) ) | |
| | ) | |

**RESPONSE OF PETITIONER WESTERN STATES PETROLEUM ASSOCIATION IN OPPOSITION TO "PUBLIC INTEREST ORGANIZATIONS'" MOTION TO INTERVENE**

This Court should deny the Motion to Intervene filed by West Long Beach Association, Sierra Club, Pacific Environment, and Center for Biological Diversity (collectively, "Movants") as respondents in support of Respondent United States Environmental Protection Agency ("EPA") in the above-captioned action (the "Motion," ECF No. 2108151), because Movants do not satisfy the standards for intervention as of right or permissive intervention, and because the State of California and Respondent EPA will fully represent Movants' interests in this litigation.

1

## BACKGROUND

### I.    WSPA'S PETITION FOR REVIEW AND STATE OF CALIFORNIA INTERVENTION

WSPA petitioned this Court for review of EPA's final decision entitled "*California State Nonroad Engine Pollution Control Standards; Ocean- Going Vessels At-Berth; Notice of Decision*," published in the Federal Register at 88 Fed. Reg. 72,461 (Oct. 20, 2023) (the "Authorization").  The Authorization granted the California Air Resources Board's ("CARB") request for authorization of amendments to its Ocean-Going Vessels At-Berth regulation ("At-Berth Amendments").  In relevant part, the At-Berth Amendments mandated an aggressive (and ultimately infeasible) timeline[1] to require "auxiliary engine emission reduction requirements" for "tanker vessels (also emission reduction requirements to tanker vessel auxiliary boilers) while docked or 'berthed' at specified marine terminals and ports in California."  Petition, Ex. A (88 Fed. Reg. 72,462).  EPA based its Authorization on "CARB's submissions, relevant adverse comment, and other comments in the record."  *Id*. (88 Fed. Reg. 72,476).

On March 14, 2025, the State of California, by and through CARB, moved

---

[1] The Tankers must use shore-based electricity (which would require extensive infrastructure construction) or another CARB-approved emissions control strategy (which has yet to be tested and approved for tankers) to reduce emissions by January 1, 2025, for visits to the Ports of Los Angeles and Long Beach, and by January 1, 2027, for visits to other regulated terminals.  *See* Cal. Code Regs. tit. 17, §§ 93130.3(a), 93130.5, 93130.7(b).

to intervene in this action. *See* Motion by State of California for Leave to Intervene in Support of Respondent, ECF No. 2105921 ("CARB Motion"). CARB stated that it has an interest in enforcing the At-Berth Amendments and in achieving the Amendments' intended benefits, including "emission reductions and technological advancements . . . that the amendments to the At Berth Regulation are designed to produce." CARB Motion, p. 1; *see also id*., pp. 8-9 (stating CARB's interests in enforcing the Amendments to "'help prevent' harms to local residents and businesses"). WSPA did not oppose CARB's intervention.

## II.    PETITION TO EPA

On February 28, 2025, WSPA filed an administrative petition with EPA under section 307(d) of the Clean Air Act, 42 U.S.C. §7607(d), requesting that EPA reconsider certain portions of the Authorization based on a fundamental change in the facts on which EPA previously relied in issuing the Authorization. WSPA further requested that EPA issue a stay to suspend the portions of the At-Berth Amendments applicable to tankers while EPA undertakes reconsideration of the Authorization.

Notably, EPA's Authorization was based in part on the agency's finding that, although capture-and-control systems for tankers did not exist in 2023, they would be available by January 1, 2025. *See* 88 Fed. Reg. at 72,474. This finding was based on EPA's reliance on and acceptance of CARB's representations that

existing capture-and-control systems designed for other marine vessels would be modified for tankers, tested, certified, manufactured and available for use by the entire Ports tanker fleet, all before January 1, 2025. *Id.* at 72,470–71. Because no tanker capture-and-control systems are yet available even today, CARB's representations have now been proven false, and WSPA's petition for EPA to reconsider its Authorization in light of this new fact is now pending before EPA.

## III. PROPOSED INTERVENORS' STATED INTERESTS IN THIS ACTION

Movants seek to intervene based on the same interests asserted by CARB—namely, continued enforcement of At-Berth Amendments and "preserv[ing] the regulation's important public health and environmental benefits" (emissions reductions). Motion, pp. 7, 9. Movants further argue that "petitioners raise questions of law or fact that will be resolved on the administrative record" (*id.*, p. 16), and Movants admit that their comments and concerns are already part of the administrative record. *Id.*, pp. 6-7 (movants submitted comments and engaged in an "extensive public process" with EPA); *id.*, p. 11 (same, participating with EPA and CARB). To the extent those comments are relevant to the merits of WSPA's Petition, they are already part of the record and before this Court for consideration.

Moreover, Movants' statements concerning emissions reductions from the At-Berth Amendments overall (*e.g.*, projections for steam ships, container vessels, refrigerated cargo, and cruise vessels; see Motion, pp. 13-15) are not relevant to

WSPA's Petition or its members' interests in tanker vessels. Expansion or enlargement of issues by a proposed intervenor is not appropriate, would unnecessarily consume the parties' and Court's resources, and complicate and unduly delay the litigation, while not adding to the disposition of the underlying issues. *See Vinson v. Washington Gas Light Co.*, 321 U.S. 489, 498 (1944).

## ARGUMENT

### I.    MOVANTS ARE NOT ENTITLED TO INTERVENTION AS OF RIGHT

"Because the Federal Rules of Appellate Procedure are silent, [this Court] appl[ies] the intervention standards of Civil Rule 24." *United States v. All Assets Held at Credit Suisse (Guernsey) Ltd.*, 45 F.4th 426, 432 (D.C. Cir. 2022). Federal Rule of Civil Procedure ("FRCP") 24(a) provides in pertinent part that the court "must permit anyone to intervene who… claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, ***unless existing parties adequately represent that interest***." FRCP 24(a)(2) (emphasis added.)

An applicant seeking to intervene as of right under Rule 24(a) must meet four requirements: "(1) the application to intervene must be timely; (2) the applicant must demonstrate a legally protected interest in the action; (3) the action must threaten to impair that interest; and (4) no party to the action can be an

5

adequate representative of the applicant's interests." *Karsner v. Lothian,* 532 F.3d 876, 885 (D.C. Cir. 2008) (quoting *Sec. Exch. Comm'n v. Prudential Sec. Inc.,* 136 F.3d 153, 156 (D.C. Cir. 1998)).

Movants fail to satisfy the fourth criterion here because they cannot show that the agencies (CARB and/or EPA) will not adequately represent their interests in the litigation. As discussed above, the State of California, by and through CARB, moved to intervene and such motion was unopposed. Movants and CARB – as the agency that adopted the At-Berth Amendments – plainly share the same interests in defending the Amendments against challenge. *Compare* Motion, p. 9 ("Movants are nonprofit, public interest organizations committed to protecting their members from the effects of harmful air pollution, and to advancing their members' interest in wider use of cleaner technologies for ship power") *with* CARB Motion, p. 1 ("California also has substantial interests in the benefits— including emission reductions and technological advancements—that the amendments to the At Berth Regulation are designed to produce.") Movants have not met their burden to show that CARB is unable or unwilling to represent those interests. *See Freedom from Religion Found., Inc. v. Geithner,* 644 F.3d 836, 841 (9th Cir. 2011) ("Where the party and the proposed intervenor share the same 'ultimate objective,' a presumption of adequacy of representation applies" (citation omitted)).

Indeed, Movants bear the burden of demonstrating that CARB and/or EPA will not adequately represent their interests. *Diamond v. District of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986). Although this burden is "not onerous" (*id.*), intervention will be denied when the intervening party only seeks to raise arguments already raised or expected to be raised by another party: "A would-be intervenor is adequately represented when she 'offer[s] no argument not also pressed by' an existing party." *All Assets Held at Credit Suisse (Guernsey) Ltd.*, 45 F.4th at 432 (citation omitted); *see also Old Dominion Elec. Cooperative v. FERC*, 892 F.3d 1223, 1233 (D.C. Cir. 2018) (the court considers "whether the existing parties can be expected to vindicate the would-be intervenor's interests").

Such is the case here. As to EPA, Movants argue that "it is ***quite possible*** that Respondent will not advance the same legal arguments as Movants." Motion, p. 19 (emphasis added). That falls far short of the showing required under FRCP 24(a). In addition, Movants' stated interests are coextensive with CARB's: Movants seek to ensure "that the At-Berth Amendments ***may continue to be enforced*** and to preserve the regulation's important public health and environmental ***benefits***." Motion, p. 7 (emphasis added). Likewise, CARB seeks to "retain authority ***to enforce*** its existing laws" and "to protect the regulatory framework Congress enacted and the ***benefits*** – including emission reductions – that these state standards provide." CARB Motion, p. 5 (emphasis added).

7

Because both CARB and Movants seek the same result in this litigation – continued enforcement of the At-Berth Regulation and purported emissions reductions – and intend to press the same arguments, CARB adequately represents Movants' interests here. *Karsner,* 532 F.3d at 885.

Movants contend that CARB cannot adequately represent their interests because the agency purportedly has interests in enforcing state laws that are "broader than" the interests of Movants' members. Motion, p. 19. Specifically, Movants claim CARB "has an interest in reducing pollution in California *and* creating a welcoming environment for industries in their state." Motion, p. 19 (emphasis original). This "dual" goal appears nowhere in CARB's mission statement or in any other statement or representation attributed to CARB. Moreover, Movants present no evidence whatsoever that CARB will favor industry in this action. To the contrary, Movants' claim is belied by CARB's action in moving to intervene *against* WSPA and in its stated interests in its Motion. *See* CARB Motion, p. 5 (CARB seeking to intervene to "enforce its existing laws" and protect "benefits – including emission reductions"); *id*. at 8 (stating "the inability to enforce existing state laws would result in increased emissions from vessels at berth in California" and enforcement of the At-Berth Amendments would "'help prevent' harms to local residents and businesses..."). These are the same interests advanced by Movants here.

Movants also assert that CARB cannot adequately represent their members' interests because those interests are "deeply personal."  Motion, p. 19.  However, Movants fail to explain exactly how these "personal" interests are distinct from CARB's interest in protecting the public health and safety of California residents. In adopting the At-Berth Amendments, CARB emphasized "the public health and air quality benefits beyond those achieved by the 2007 At-Berth Regulation and the benefits that would accrue to coastal and port communities."  88 Fed. Reg. 72,467 (citing CARB Board Resolution 20-22).  Because Movants' purported "personal" interests in this action are indistinguishable from the public health and safety interests CARB asserted in adopting the At-Berth Amendments, they cannot be transmuted into the "narrow" or "parochial" interests addressed in cases cited by Movants.  *See* Motion, pp. 18-19.

Accordingly, Movants have failed to show that their interests will not be adequately represented by the current parties (including Proposed-Intervenor CARB) and their arguments fall far short of the showing required for intervention as of right under FRCP 24(a).

## II.    PERMISSIVE INTERVENTION SHOULD BE DENIED

For similar reasons, Movants do not meet the standards for permissive intervention under FRCP 24(b).  FRCP 24(b) provides in pertinent part: "On a timely motion, the court may permit anyone to intervene who… has a claim or

defense that shares with the main action a common question of law or fact." FRCP 24(b)(1)(B). A court may grant permissive intervention where the applicant shows "(1) an independent ground for subject matter jurisdiction; (2) a timely motion; and (3) a claim or defense that has a question of law or fact in common with the main action." *Equal Employment Opportunity Comm'n v. Nat'l Children's Ctr., Inc.,* 146 F.3d 1042, 1046 (D.C. Cir. 1998). However, the court has broad discretion to deny permissive intervention even if these requirements are met. *Id.* at 1048. In exercising that discretion, the court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." FRCP 24(b)(3).

As discussed above, Movants' interests are adequately represented by CARB. Furthermore, intervention would prolong the litigation and impose additional delay and costs on the existing parties in responding to duplicative briefing, thereby causing undue "delay or prejudice" in the adjudication of the original parties' rights. FRCP 24(b)(3); *Venegas v. Skaggs*, 867 F.2d 527, 531 (9th Cir. 1989) ("[J]udicial economy is a relevant consideration in deciding a motion for permissive intervention"). Tellingly, Movants have not specified the arguments they intend to raise, or how these arguments will differ from those advanced by CARB (or EPA). Movants state only that they "intend to offer defensive arguments," which "necessarily share questions of law and fact in

common with the underlying action." Motion, p. 20. This does not meet the burden for permissive intervention. Allowing Movants to intervene in this action would potentially inject new issues that would complicate and delay the litigation. *See Nuesse v. Camp,* 385 F.2d 694, 704 (D.C. Cir. 1967) ("[P]ermissive intervention may be denied in order to avoid the likelihood of undue delay"); *see also ManaSota-88, Inc. v. Tidwell*, 896 F.2d 1318, 1323 (11th Cir. 1990) (denying permissive intervention where intervenors sought to "inject numerous issues into the case," resulting in "undue delay"). Allowing intervention here would result in duplicative briefing of issues, leading to unnecessary delay and imposing unnecessary burdens on the parties' and the Court's resources.

In addition, as Movants admit, the record generated by CARB in adopting the At-Berth Amendments and CARB's representations to EPA are already settled and Movants will add nothing to the issues this Court is asked to decide.

## CONCLUSION

For the foregoing reasons, WSPA requests that this Court deny the Motion to Intervene.

Respectfully submitted,

*/s/ Matthew Morrison*
Matthew Morrison
Pillsbury Winthrop Shaw Pittman LLP
1200 17th Street NW

11

Washington, DC 20036
Tel: (202) 663-8165
matthew.morrison@pillsburylaw.com

Michael S. McDonough
725 South Figueroa Street, Suite 3600
Los Angeles, California 90017
Tel: (213) 488-7100
michael.mcdonough@pillsburylaw.com

*Counsel for Petitioner*
*Western States Petroleum Association*

## CERTIFICATE OF COMPLIANCE

This motion complies with the requirements of Fed. R. App. P. 27(d)(2) because it contains 2,281 words, excluding any accompanying documents authorized by Fed. R. App. R. 27(a)(2)(B).

This motion complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

*/s/ Matthew Morrison*
MATTHEW MORRISON

**CERTIFICATE OF SERVICE**

I hereby certify that on April 7, 2025, I electronically filed the foregoing pleading with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system, which will accomplish service to participants in this case that are, as required, registered CM/ECF users.

/s/ *Matthew Morrison*
MATTHEW MORRISON